LAW OFFICES OF SETH W. WIENER
Seth W. Wiener (SBN 203747)
seth@sethwienerlaw.com
609 Karina Court,
San Ramon, California 94582
Telephone: (925) 487-5607

DEVLIN LAW FIRM LLC
Timothy Devlin (*pro hac vice* to be filed)
tdevlin@devlinlawfirm.com
Patrick R. Delaney (*pro hac vice* to be filed)
pdelaney@devlinlawfirm.com
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*ATTORNEYS FOR PLAINTIFF
PRINCEPS SECUNDUS LLC*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRINCEPS SECUNDUS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>and SAMSUNG SEMICONDUCTOR, INC.,<br><br>    Defendants. | Case No.: 5:20-cv-00201<br><br>**ORIGINAL COMPLAINT FOR PATENT INFRINGMENT** |

Plaintiff Princeps Secundus LLC ("Princeps" or "Plaintiff"), for its Complaint against Defendants Samsung Electronics Co., Ltd. ("SEC"); Samsung Electronics America, Inc. ("SEA") and Samsung Semiconductor, Inc. ("SSI"), (collectively "Samsung" or "Defendants"), alleges the following.

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

2. Plaintiff Princeps is a limited liability company organized under the laws of the State of Delaware with a place of business at Princeps Secundus LLC, 261 West 35th Street, Suite No. 1003, New York, New York 10001.

3. Defendant Samsung Electronics Co., Ltd. ("SEC") is a foreign corporation having its principal place of business at 129, Samsung-Ro, Yeongtong-Gu, Suwon, Republic of Korea 16677. SEC produces and sells telecommunications, electronics and mobile phone technologies worldwide, including in the United States.

4. Defendant Samsung Electronics America, Inc. ("SEA") is a corporation organized and existing under the laws of New York having its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. Upon information and belief, SEA is a wholly-owned subsidiary of Samsung Electronics Co., Ltd. (SEC). As explained in more detail below, SEA has a regular and established place of business in this District and manufactures, supplies and sells consumer electronics and products throughout the United States, including in this District.

5. Samsung Semiconductor, Inc. ("SSI") is a corporation organized and existing under the laws of California having its principal place of business at 3655 North First Street, San Jose, California 95134 or 601 McCarthy Blvd., Milpitas, California 95035. Upon information and belief, SSI is a subsidiary of SEA. Upon information and belief, SSI designs, manufactures, and supplies Samsung's EXYNOS® mobile processor utilized in several Samsung mobile devices. (See source: https://www.samsung.com/semiconductor/processor/mobile-processor/, and https://news.samsung.com/us/samsungs-exynos-auto-v9-next-generation-platform-audi-vehicle-

infotainment-system//, last accessed and downloaded June 16, 2019, noted on January 9, 2020 as having been removed.)  On information and belief, the EXYNOS® mobile processor is an integral and substantial component of the "Accused Instrumentalities", as set forth in greater detail below and in the attached preliminary and exemplary claim charts provided (Exhibits A-1 and A-2).

6. SEA and SSI are both subsidiaries of SEC.  All the Defendants (SEC, SEA and SSI) act in concert regarding the allegations set forth in this Complaint and, therefore, the conducts described herein are fairly attributable to either or all entities.  More specifically, Defendants work collectively in the designing, manufacturing, importing, distributing and selling of the Accused Instrumentalities described in more detail below and in the attached claim charts (Exhibits A-1 and A-2).

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8. Venue with respect to Defendant SEC is proper in this District under 28 U.S.C. § 1391(c)(3) because Defendant SEC is not a resident of the United States, and also under 28 U.S.C. § 1391(b)(2) because SEC, imports, sells and offers to sell products and services throughout the United States, including in this District, and introduces products and services into the stream of commerce and effectuates these sales knowing that the products and services would be sold in this District and elsewhere in the United States.

9. This Court has personal jurisdiction over SEC.  SEC is amenable to service of summons for this action.  Defendant SEC has sought protection and benefit from the laws of the State of California by maintaining one or more of its United States affiliates (Defendant SSI) in this District and/or by placing infringing products into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in this District.

10. SEC – directly or through intermediaries (including distributors, retailers, and others), subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its products in the United States and this District.  SEC has purposefully and voluntarily placed one or more of its infringing products into the stream of commerce with the awareness and/or intent that they will be purchased by consumers in this District.  SEC knowingly and purposefully ships infringing products into and within this District through an established distribution channel.  These infringing products

have been and continue to be purchased by consumers in this District.  Upon information and belief, through those activities, SEC has committed the tort of patent infringement in this District.

11. On information and belief, Defendant SEC is subject to this Court's general and specific personal jurisdiction because SEC has sufficient minimum contacts within California and this District, because Defendant SEC purposefully availed itself of the privileges of conducting business in California and in this District, because Defendant SEC regularly conducts and solicits business within California and within this District, and because Plaintiff's causes of action arise directly from Defendant SEC's business contacts and other activities in California and this District.  Having purposefully availed itself of the privilege of conducting business within this District, Defendant SEC should reasonably and fairly anticipate being brought into court here.

12. Venue with respect to Defendant SEA is proper in this District under 28 U.S.C. § 1400(b) because, upon information and belief, Defendant SEA maintains a regular and established place of business in this District, the Samsung Device Solutions America campus, also known as "Samsung@First".  Samsung Device Solutions America campus is located at 3655 North 1st Street, San Jose, California 95134, and has committed infringing acts in this District through its sales of the Accused Instrumentalities in this District, and also under 28 U.S.C. § 1391(b)(2) because SEA sells and offers to sell products and services throughout the United States, including in this District, and introduces products and services into the stream of commerce and effectuates these sales knowing that the products and services would be sold in this District and elsewhere in the United States.  In addition, on information and belief, Defendant SEA is a wholly owned subsidiary of SEC, a closely related co-defendant in this action over which this Court has venue under 28 U.S.C. § 1391(c)(3) and 28 U.S.C. § 1391(b)(2) as noted above.  Furthermore, Defendant SEA wholly owns another subsidiary, SSI, another closely related co-defendant in this action and a California corporation over which this Court has venue under 28 U.S.C. § 1400(b), as noted below.

13. This Court has personal jurisdiction over SEA.  SEA has conducted and regularly conducts business within the United States and this District.  SEA has purposefully availed itself of the privileges of conducting business in the United States, and more specifically in California and this District.  SEA has sought protection and benefit from the laws of California placing infringing

1  products into the stream of commerce through an established distribution channel with the awareness

2  and/or intent that they will be purchased by consumers in this District.

3        14.    SEA – directly or through intermediaries (including distributors, retailers, and others),

4  subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its products in the

5  United States and this District.  SEA has purposefully and voluntarily placed one or more of its

6  infringing products into the stream of commerce with the awareness and/or intent that they will be

7  purchased by consumers in this District.  SEA knowingly and purposefully ships infringing products

8  into and within this District through an established distribution channel.   These infringing products

9  have been and continue to be purchased by consumers in this District.  Upon information and belief,

10 through those activities, SEA has committed the tort of patent infringement in this District.

11       15.    On information and belief, Defendant SEA is subject to this Court's general and

12 specific personal jurisdiction because SEA has sufficient minimum contacts within California and this

13 District, because Defendant SEA purposefully availed itself of the privileges of conducting business in

14 California and in this District, because Defendant SEA regularly conducts and solicits business within

15 California and within this District, and because Plaintiff's causes of action arise directly from

16 Defendant SEA's business contacts and other activities in California and this District.  Having

17 purposefully availed itself of the privilege of conducting business within this District, Defendant SEA

18 should reasonably and fairly anticipate being brought into court here.

19       16.    Venue with respect to Defendant SSI is proper in this District under 28 U.S.C. §

20 1400(b) because SSI is a California corporation and therefore resides in this District.

21       17.    This Court has personal jurisdiction over SSI.  SSI has conducted and regularly

22 conducts business within the United States and this District.  SSI has purposefully availed itself of the

23 privileges of conducting business in the United States, and more specifically in California and this

24 District.  SSI has sought protection and benefit from the laws of California by incorporating itself in

25 this District and/or by placing infringing products into the stream of commerce through an established

26 distribution channel with the awareness and/or intent that they will be purchased by consumers in this

27 District.

28       18.    SSI – directly or through intermediaries (including distributors, retailers, and others),

subsidiaries, alter egos, and/or agents – ships, distributes, offers for sale, and/or sells its products in the United States and this District. SSI has purposefully and voluntarily placed one or more of its infringing products into the stream of commerce with the awareness and/or intent that they will be purchased by consumers in this District. SSI knowingly and purposefully ships infringing products into and within this District through an established distribution channel. These infringing products have been and continue to be purchased by consumers in this District. Upon information and belief, through those activities, SSI has committed the tort of patent infringement in this District.

19. On information and belief, Defendant SSI is subject to this Court's general and specific personal jurisdiction because SSI has sufficient minimum contacts within California and this District, because Defendant SSI purposefully availed itself of the privileges of conducting business in California and in this District, because Defendant SSI regularly conducts and solicits business within California and within this District, and because Plaintiff's causes of action arise directly from Defendant SSI's business contacts and other activities in California and this District. Having purposefully availed itself of the privilege of conducting business within this District, Defendant SSI should reasonably and fairly anticipate being brought into court here.

## BACKGROUND

### The Inventions

20. Timothy B. Higginson is the sole inventor (hereinafter "the Inventor") of U.S. Patent No. 6,703,963 ("the '963 patent" or "the patent in suit"). A true and correct copy of the '963 patent is attached hereto as Exhibit A.

21. The '963 patent resulted from the pioneering efforts of the Inventor in the area of small-profile multifunctional input devices. These efforts resulted in the development of novel input devices, and methods for operating them. The input devices utilize one or more functional modes and one or more domain levels associated with entering input values into the devices. A provisional patent application directed to the inventions was filed in the United States in September 2001.

22. At the time of the Inventor's pioneering efforts, the most widely implemented technology used to address keying input data still involved implementing variants of the traditional two-handed QWERTY keyboard. In that type of system, as explained in the '963 patent:

> The QWERTY keyboard has been used as an input means since the development of the very first electronic devices. However, with the development of smaller, portable electronic devices, use of the QWERTY keyboard with these devices has certain drawbacks. As electronic devices have become smaller through advances in integrated circuitry, the traditional QWERTY keyboard is simply too large for many of the smaller electronic devices as the keyboard must be large enough to accommodate both hands of the user. Moreover, due the large size of the traditional keyboard, it is not sufficiently portable for use in conjunction with many of these electronic devices.
>
> Previous attempts to overcome this short coming of the keyboard have included the use of foldable keyboards as shown in U.S. Pat. No. 6,174,097 and the use of keyboards that allow for the direct connection of the electronic device to a full-size portable QWERTY keyboard as shown in U.S. Pat. No. 6,108,200. However, neither of these approaches reduces the area required for the use of the keyboard.
>
> …An additional drawback to the QWERTY keyboard is that it was designed to accommodate the mechanical components of the first typewriters, as such, the layout of its keys does not facilitate the rapid input of data from the keyboard.
>
> …Another drawback to the traditional QWERTY keyboard is that it has typically only had a single functionality, namely alphanumeric input. However, with the decrease in size of many of electronic devices, additional functions are required from a smaller keyboard that current keyboards cannot accommodate.

(*See* Exhibit A, '963 patent at 1:37 to 2:23.)[1]

23.     The Inventor conceived of the inventions claimed in the '963 patent to address the aforementioned drawbacks of the prior art. As explained in the '963 patent:

> The miniaturization of many electronic devices has allowed them to be designed such that they can be operated with only a single hand of the user or has made their use incompatible with a full-sized QWERTY keyboard. Because the QWERTY keyboard was developed for two-handed use with the original typewriter, it cannot be readily adapted for efficient use by only a single hand, or one or both thumbs when used in conjunction with many electronic devices.
>
> …Previous attempts to increase the speed and efficiency of data input into an electronic device have included the development and use of voice-recognition software. However, the error rate typically associated with this type of software has thus far prevented its large-scale use as an effective input device.
>
> …Previous attempts to overcome shortcomings of the QWERTY keyboard have included the

---

[1] Citations to patents in this Complaint refer to columns and lines within columns of any cited patent. For example, the citation referenced by this footnote refers to column 1, at line 37 through column 2, at line 23 in the '963 patent.

> use of alternative keyboards, such as the standard 12-key arrangement found on most telephone and cellular phones. A drawback of using the standard telephone as a data-input device is the slow rate of input due to use of only a single finger or thumb to activate the keys.

(*See* Exhibit A, '963 patent at 1:56 to 2:30.)

> The present invention provides a multifunctional input device. The input device includes a functional mode which defines the mode of operation of the input device. Each functional mode includes one or more domain levels with each domain level containing one or more domain-level values. Each domain level-value within each functional mode is assigned to one of a plurality of programmable input keys. The domain-level value assigned to each input key controls the function of that input key within a given functionality and domain level. The present invention also includes a display to indicate the domain-level value associated with each of the programmable input keys within a given functionality.

(*See* Exhibit A, '963 patent at 2:33-45.)

**Technological Innovation**

24. The patented inventions disclosed in the '963 patent resolve technical problems related to data input devices, and particularly, to problems related to the utilization of small-profile data input devices. As the patent explains, there are several limitations of the prior art as regards full-sized QWERTY keyboards in that:

> [T]he keyboard must be large enough to accommodate both hands of the user. Moreover, due the large size of the traditional keyboard, it is not sufficiently portable for use in conjunction with many of these electronic devices.

('963 patent at 1:40-48.)

> The miniaturization of many electronic devices has allowed them to be designed such that they can be operated with only a single hand of the user or has made their use incompatible with a full-sized QWERTY keyboard.

('963 patent at 1:56-59.)

> Moreover, the size of the standard QWERTY keyboard, which can have in excess of 100 keys, often limits its versatility and utility as an input device.

('963 patent at 1:64-66.)

25. The claims of the '963 patent do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the patent in suit recite inventive concepts that are deeply rooted in computerized data input and data processing. They offer technology that overcomes problems specifically arising

out of how to maximize efficiency and versatility associated with entering data into a small profile data input device.

26. In addition, the claims of the patent in suit recite inventive concepts that improve the functioning of electronic data input devices catalogs, particularly as they recite a combination of controls by which a user can dynamically generate user-specific data input interfaces for the devices.

27. Moreover, the claims of the '963 patent recite inventive concepts that are not merely routine or a conventional use of computer technology or transaction processing. Instead, the patented inventions disclosed in the patent in suit provide a new and novel solution to specific problems related to automating and customizing the process of entering data into small profile input devices by dynamically utilizing user specified control combinations. The claims of the patent in suit thus specify how interfaces for entering user data are manipulated to yield a desired result.

28. And finally, the patented inventions disclosed in the patent in suit do not preempt all the ways that user-specific interface selections may be used to improve entering data into small profile input devices, nor does the patent in suit preempt a well-known or prior art technology, such as a standard QWERTY keyboard.

29. Accordingly, the claims in the '963 patent recite a combination of elements sufficient to ensure that the claims, in substance and in practice, amount to significantly more than a patent-ineligible abstract idea.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 6,703,963

30. The allegations set forth in the foregoing paragraphs are incorporated herein by reference.

31. On March 9, 2004, the '963 patent was duly and legally issued by the United States Patent and Trademark Office under the title "Universal Keyboard."

32. Princeps is the assignee and owner of the right, title and interest in and to the '963 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

33. Upon information and belief, Defendants have directly infringed and continue to directly infringe at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(a) by

making, using, selling, offering to sell and/or importing information input devices such as Samsung phones with proprietary Samsung Apps and/or third-party Apps with keyboard functionalities and an operating system such as the Android operating system (the "Accused Instrumentalities"), as set forth in detail in the attached preliminary and exemplary claim charts provided in Exhibits A-1 and A-2. (*See* Princeps' Claim Charts for claims 1, 2, 3, 9, 12 and 60 of the '963 patent, Exhibits A-1 and A-2.)

34. The Accused Instrumentalities infringed and continue to infringe claims 1, 2, 3, 9, 12 and 60 of the '963 patent during the pendency of the '963 patent.

35. Samsung was made aware of the '963 patent and its infringement thereof at least as early as June 24, 2019, when it was served a Complaint based on the '963 patent in an earlier action brought in another District, Del. C.A. No. 1:19-cv-01103-CFC (see Dkt. No. 8 in that case), dismissed without prejudice.

36. Users in California and elsewhere in the United States have used and interacted with Defendants' systems as recited in claims 1, 2, 3, 9, 12 and 60 of the '963 patent.

37. Upon information and belief, since at least the time of receiving this Complaint, Samsung has induced and continues to induce others to infringe at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Samsung's partners and customers, whose use of the Accused Instrumentalities constitutes direct infringement of at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent.

38. Samsung's actions that aid and abet others such as their partners and customers to infringe include distributing the Accused Instrumentalities and providing instructional materials and/or services related to the Accused Instrumentalities.  On information and belief, Samsung has engaged in such actions with specific intent to cause infringement and with willful blindness to the resulting infringement because Samsung has had actual knowledge of the '963 patent and that its acts were inducing infringement of the '963 patent since at least June 24, 2019, as referenced above.

39. Upon information and belief, Samsung is liable as a contributory infringer to at least claims 1, 2, 3, 9, 12 and 60 of the '963 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States input device technology, such as the Samsung phones with proprietary

Samsung Apps and/or third-party Apps with keyboard functionalities which are especially made or adapted for use in an infringement of the '963 patent. The Accused Instrumentalities are material components for use in practicing the '963 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

40. On information and belief, collective Defendant Samsung is a for-profit organization with revenues of approximately $221 billion U.S.D. per year. Moreover, Defendant Samsung, including their employees and/or agents, make, use, sell, offer to sell, import, provide and cause to be used the Accused Instrumentalities for Defendants' customers, leading to direct and indirect revenues and profit. As one example of indirect profit, entities such as Defendants will frequently offer the Accused Instrumentalities at reduced pricing as an inducement to attract select categories of customers, such as students, who then purchase additional products or services. On information and belief, without the availability of infringing tools such as the Accused Instrumentalities, Defendants would be at a disadvantage in the marketplace and would generate less revenue overall.

41. On information and belief, since at least the time it received notice by the earlier Complaint referenced above, Samsung's infringement has been and continues to be willful.

42. Princeps has been harmed by Samsung's infringing activities.

43. Princeps reserves the right to modify its infringement theories as discovery progresses in this case. It shall not be estopped for purposes of its infringement contentions or its claim constructions by the claim charts it provides with this Complaint. Princeps intends the claim charts (Exhibits A-1 and A-2) for the '963 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure. The claim charts are not Princeps's preliminary or final infringement contentions or preliminary or final claim construction positions.

## JURY DEMAND

44. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, and Rule 3-6 of the Civil Local Rules, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

45. WHEREFORE, Plaintiff Princeps demands judgment for itself and against the Defendants as follows:

A. An adjudication that the Defendants have infringed the '963 patent;

B. An award of damages to be paid by Defendants adequate to compensate Plaintiff for the Defendants' past infringement of the '963 patent, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D. An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

Dated: January 9, 2020

Respectfully submitted,

LAW OFFICES OF SETH W. WIENER

 /s/Seth W. Wiener
Seth W. Wiener
California State Bar No. 203747
609 Karina Court
San Ramon, California 94582
Telephone:  (925) 487-5607
Email: seth@sethwienerlaw.com

DEVLIN LAW FIRM LLC

Timothy Devlin (*pro hac vice* to be filed)
Patrick R. Delaney (*pro hac vice* to be filed)
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone:  (302) 449-9010
Facsimile:  (302) 353-4251
Email:
tdevlin@devlinlawfirm.com
pdelaney@devlinlawfirm.com

*Attorneys for Plaintiff,*
*Princeps Secundus LLC*